Plaintiff's (Robert J Tretola ) claims of Malicious
Prosecution by Ronald M Singer ,Christopher Cozad ,
SouthCross Surgery Center LLC , SouthCross
Management Group LLC , SouthCross Developement
Company LLC , Kevin O'Brien , Alston & Bird LLP ,
Marguerite S Willis , Nexsen Pruet LLC ,Scott C Nehrbass
And Shook Hardy & Bacon LLP are hereby submitted
To this Court

1). South Cross Management Group LLC (SMG ), South Cross
Development company LLC (SDC) any and South Cross surgery Center LLC
and their attorney have already argued and the court agreed, that this is a
federal action having filed suit in federal court in February 2003. Therefore
this Court has jurisdiction since it presided over this case from February 2003
until approximately February 2004 when the judge dismissed the federal
action.

2). Tretola originally filed a claim against Mr. Singer, Mr. Cozad and South
Cross surgery Center LLC in March 2003 for breach of contract, fraud and
violation of South Carolina codes of laws 33-44-601 (1),33-44-602(a) ,33-
44-603, 33-44701 and 33-44-801 in state court.

3).Singer, Cozad and South Cross surgery Center then filed a counterclaim
against T retola claiming violation of his non-complete clause of the founders
agreement. The foundation of this case was the founders agreement itself.

4). In February 2003 South Cross surgery Center LLC, SMG, and SDC filed
a federal action claiming that plaintiff violated his noncompete and a claim
against others    for violation of antitrust laws for $45 million. The
foundation of that lawsuit was Tretola's contract or founders agreement.
This case has subsequently been dismissed

/

5). In December 2004 Tretola filed for an amended complaint based on forgery, fraud, defamation, securities laws violation, breach of contract, offenses of public policy, violation South Carolina unfair trade practices , South Carolina antitrust violations as well as violation of South Carolina codes on "Corporations, Partnerships And Associations".

6). In November 2004 Singer, Cozad and South Cross surgery Center LLC were granted summary judgment on plaintiff's initial three claims and his motion for amended complaint was denied.  Plaintiff has filed an appeal with the appellate court.

7). Kevin O'Brien On the Part of Singer, Cozad and South Cross surgery Center LLC have subsequently filed for sanctions against plaintiff alleging that plaintiff's claims were frivolous.

8). Kevin O'Brien of Alston & Bird LLP has been attorney for Singer, Cozad, South Cross surgery Center LLC in the state action and has also represented SMG,SDC and South Cross surgery Center LLC in the federal action.

9). Marguerite Willis of the Nexsen Pruet LLC was one of  the attorneys representing SMG, SDC, and South Cross surgery Center LLC in the federal action.

10).Scott Nehrbass of Shook Hardy & Bacon LLP represented Singer, Cozad felt Cross surgery Center LLC in the state action and also represented SMG, SDC, and South Cross surgery Center LLC in the federal action.

11). Singer and Cozad are  the individuals who initiated and formed South Cross surgery Center LLC, South Cross Management group LLC and South Cross  development company LLC by soliciting and accepting investment money.  This money was accepted prior to formation of these   limited liability companies.

12).  Singer is the undisputed and self anointed leader and  power behind
SMG, SDC and South Cross surgery Center LLC and has elected himself to
be in sole control of these entities.


Plaintiff (Tretola)  submits his claim for malicious prosecution against
all these defendants based on the fact that Singer and Cozad  solicited and
sold securities (an investment contract or founders agreement Exhibit I) prior
to formation of any limited liability company( Exhibit II ).  Through
unanimous written consent they appointed themselves as leader and initial
board members.  In fact, Singer granted himself, through the subscription
agreement "special power of attorney" and through " Highlight of Provisions
of Operating Agreement " special privileges and powers .. Therefore the
action taken in the initial stages in the creation of these limited liability
companies rests entirely with these two individuals mostly Ronald Singer.
                                                                                                            Singer and
Cozad did business as South Cross surgery Center LLC from the time the
company was formed on September 24 2002 until at least until the  beginning
of April 2003 with Singer and Cozad as the only members( Exhibit III ).  It
wasn't until the beginning of April that   the investors of South Cross surgery
Center LLC were converted from founder to  member of this limited liability
company.  This means South Cross surgery Center LLC did business as an
entity with only two members, Singer and Cozad.  All the members who
invested their money were not officially a member of South Cross surgery
Center LLC and had virtually no say are voting rights in this entity.
Therefore, total and complete control of South Cross surgery Center LLC,
South Cross Management group LLC and SouthCross Development
Company  LLC were in the hands of Singer and Cozad.
                                                                                                            Tretola
hereby submits that Singer and Cozad  formed three limited liability
companies and fraudulently called them " ASC  joint-venture LLC"
(ExhibitIV A  - Pleading of Kevin O'Brien in Federal Court  B- Pleading of
Scott Nehrbass in state court C- Affadavit of Cozad ) a company which does
not exist.  This fraudulent company was created in order to funnel money
given for South Cross surgery Center LLC and use this money on SMG and

SDC( Exhibit IV-C ) . Additionally these individuals forged Tretola's
founders agreement in order to file a counterclaim in state court and a federal
action to stop Tretola and his business partners, Sports South LLC, from
doing business in a competitive geographic area. Singer and Cozad's
attorneys all knowingly and deliberately used all of the illegal activities of
their client's to prevail not only in federal court but state court as well.

Plaintiff hereby submits his causes for malicious prosecution of these
defendants for their claim in federal court for $45 million.

1). Fraud and/or forgery: defendants have used a forged document, plaintiffs
contract or founders agreement, as the basis of there to lawsuit in state and
federal court. Plaintiff has an" forensic document's expert "who will testify
to this fact. This is a violation of South Carolina codes 1613-10,16-13-230
and16-13-240. On information and belief it was Singer and/or Cozad who
forged this document. Singer and Cozad and their attorneys deliberately and
knowingly filed a forged document in federal court to deceive this court in
order to gain legal advantage over this plaintiff and other individuals for
economic gain.

2). Fraud: defendants and their attorneys deliberately and knowingly filed
affidavits in court which are false. Cozad make claims that their investment
group of ASC joint-venture LLC controlled the business finances and
activities of South Cross surgery Center LLC, SMG, and SDC, when in fact
no such entity as ASC joint-venture LLC existed. This is a fraudulent entity
created to funnel money to private uses of Cozad and Singer. In defendants
response to plaintiffs and initial complaint in state court defendants admitted
to using the money raised for expenses of South Cross surgery Center LLC
outside of the design purpose of the founders agreement. ( Exhibit 4-B).

"All of these expenses charged to founders accounts were attributable or
related to the surgery Center or the land underlying it". (Exhibit 4-B
Defendants response to plaintiffs initial complaint).

According to the founders agreement this is contrary to what the agreement proposes. "The company (South Cross surgery Center LLC) will own and operate the facility in Lancaster County South Carolina on the surgery Center site to be owned and developed by South Cross Management group LLC (SMG)". ( Number one First page founders agreement). According to #4 page 3 "the terms for founders loans to SMG will be disclosed in future documents.A Person may be a founder of both the company (South Cross surgery Center LLC) and SMG but is not required to loan money to each entity. Decisions concerning the two entities will be made separately according to each entity's founders group." Hence the need for Cozad and Singer to create a fraudulent company to funnel money not only to South Cross surgery Center LLC but two other separate limited liability companies not included in investors initial funding. The three limited liability copies were falsely created under one fraudulent company (ASC joint-venture LLC) to funnel money designed for one company that is South Cross surgery Center LLC to two other companies.

3). Securities laws violation

Defendants and their attorneys have knowingly filed documents trying to obscure the fact that these defendants violated securities laws. Defendants and their attorneys fraudulently created a false entity and an investment scheme to funnel money to other corporations illegally. This violates South Carolina codes 35-1-1490.

Singer and Cozad failed to provide plaintiff with a prospectus (at risk document, disclosure document, antifraud document) provided for in the founders agreement, last page 5, "no person may invest in the company unless and until they have received the full disclosure documents", which is also a breach of contract and violation of South Carolina codes 35-1-990 , 35-1-1010, 35-1-1590 and Section 5 Of Securities Act of 1933.

Singer and Cozad have relied upon "the limited offering" exemption as a basis for not registering its sale of securities with the commission of the state of South Carolina. ( Exhibit 5-A Operating agreement and 5-B Subscription agreement) However, Singer, Cozad and their attorneys have abused this law by violating securities laws claiming that there sale of units was not a sale of securities or investment, however in the federal lawsuit defendants describe plaintiff as an "investor" in South Cross surgery Center LLC. (Exhibit 4-A). South Carolina codes35-1-20(15) describe securities "as any note, stock, debenture, evidence of indebtedness,pre- organization   certificate of subscription subscription (founders agreement), or investment contract".  The founders agreement clearly is an investment or preorganization certificate and therefore constitutes the sale of securities.  The burden of proving otherwise rest with defendants.

Singer, Cozad and their attorneys have violated section 35-1320(9) by not registering these sold securities with the securities and exchange commission. Any transaction pursuant to an offer directed by the offeror to not more than 25 persons may enjoy an exemption.  In this case defendants have offered participation for South Cross investors to some 40-50 individuals.  Indeed, Mr. Or Brian states in his " brief in support of defendant's motion for summary judgment", (Exhibit 6)"approximately 30 physicians became founders by signing a letter agreement and paying South Cross the requisite fee".

Singer and Cozad further violated securities laws by not registering their securities as  "no commission or other remuneration can be paid directly or indirectly for soliciting a prospective buyer".  Singer and Cozad per the founders  agreement enjoy 15% and 5% respectively. (Founders agreement page 2 and Exhibit 7- answers  to interrogatories).  This statue has been upheld in South Carolina appeals court (opinion number 3775, submitted December 8, 2003-filed April 12 2004.   Gordon v Drews).  Furthermore South Carolina courts "must narrowly construe exemptions under securities laws to protect investors" (McGaha v Mosely , 283 SC268 , 273 ,322 , SE2d 461 ,464 (Ct App 1984 )).

Defendants bear the burden of proving they were entitled to claim an exemption. (SC code 35-1-340 )( supp 2003 ).

Additionally, Cozad and Singer violated South Carolina code35-1-320(10) , Limited . Preorganization subscription : "no pain that is made by any subscriber prior to filing of the articles of incorporation or limited liability company" can be done without registering with the secretary of state.

On sept 14 2002 plaintiff made payment to South Cross surgery Center LLC as well as numerous other investors to Singer and Cozad (Exhibit 2). At that point South Cross surgery Center LLC did not exist. South Cross surgery Center LLC was not created until September 24 2002 yet at that time Singer and Cozad considered plaintiff and others to be an investor. Therefore Singer and Cozad have violated yet another South Carolina code related to securities laws.

Finally violation of securities laws prohibit Singer and Cozad from suing plaintiff "on contract",SC codes 35-1 1540 which Singer, Cozad and their numerous attorneys did so in both state and federal court.

4). Breach of contract : Singer, Cozad and their attorneys conditioned plaintiffs refund on him getting up his legal rights, a refund due to plaintiff free and without conditions. (Exhibit 8). This violated South Carolina codes 33-44-601 , 602, 603, 701 and 801. Plaintiff was forced to file a civil action to recover his refund and retain his rights. Tretola was also due an accounting by the founders agreement as well as by South Carolina codes. This was never forthcoming.

5). Defamation: Singer, Cozad and their attorneys deliberately and maliciously, knowing their accusations to be false and untrue, released to the public media by verbal and written communication to television and newspaper in most of southern North Carolina and most of all of northern South Carolina, untrue accusations against plaintiff. These defendants

claimed that plaintiff engaged in illegal activity of which they knew was untrue. (Exhibit 9)

6). Singer and Cozad through SMG,SDC and South Cross surgery Center LLC initially filed suit against Tretola and others claiming conspiracy in which Tretola violated his noncompete clause of his founders agreement. This was a frivolous suit based on filing forged papers, untrue statements, breach of contract, defamation and securities laws violation. On its face however, Singer and Cozad who formed these limited liability companies, created multiple founders agreements with different noncompete clauses. Additionally, Singer and Cozad created additional agreements with outside entities also with different noncompete agreements. Indeed, Singer and Cozad negotiated different noncompete agreements with certain individuals and not others such as Tretola. By South Carolina law for noncompete to be valid there has to be "valuable consideration." In this case I received no valuable consideration, but Singer and Cozad did receive 15% and 5% respectively of the $15,000 Tretola paid to join Singer and Cozad's enterprise.

Singer, Cozad and their attorneys also made frivolous claims that Tretola Gave inside information to Daniel McKay and Springs Hospital, yet they had no proof or evidence and were able to produce none.

State of South Carolina Supreme Court opinion # 25299 June 4 2001 supported the concept of "valuable consideration" to uphold a noncompete. Therefore, Singer, Cozad and their attorneys knew there were multiple non-complete clauses, knew there was no " valuable consideration " given to Tretola and therefore the noncompete agreement could not be upheld, yet they filed and continued with their lawsuit for $45 million in federal court.

Finally, these defendants had used all of the aforementioned activities to defraud plaintiff in this court by using forged documents, fraudulent and false affidavits, breach of contract, defamation and violation of securities laws is to sue plaintiff in this cour for $45 million Tretola request a trial by jury damages pursuant to South Carolina codes for the violations stated previously and a penalty for malicious prosecution against plaintiff based on

the 45 million-dollar damages requested by these defendants in the federal lawsuit.

## CONCLUSION

Plaintiff feels that damages to him while significant, pale in comparison to the need for the public to be aware of the actions of Singer, Cozad and their attorneys. These defendants used every conceivable underhanded technique to not only defraud plaintiff but the court as well . Plaintiff feels the public has a right to know how these individuals conducted themselves , not to mention their conduct in this federal court. Plaintiff request appropriate action taken toward Singer, Cozad and their attorneys as organizers of a crooked scheme. Plaintiff feels that the public has a right to know the previous behavior of individuals who may one day solicit their hard earned money as an investment. It is also critical this federal court uphold its integrity in not allowing this kind of behavior in its courts. It is important to prevent other individuals as myself from having to spend the time, energy and money in a legal battle that has lasted since 2003 and has no end in sight. The object of this court or any court should be fairness and justice. This is what plaintiff seeks.

Robert J Trufok
2-27-06

9

2-27-06

Robert J Tretola
1228 Colonial Commons
Lancaster SC 29720


Ronald M Singer
10512 Park Rd
SUITE 113
Charlotte NC 28120

Christopher Cozad
10512 Park Rd
Suite 113
Charlotte NC 28120


SouthCross Surgery Center LLC
Corporation Service Co
5000 Thurmond Mall Blvd
Columbia SC 29201-0000

SouthCross Management Gp LLC
Corporation Service Co
5000 Thurmond Mall Blvd
Columbia SC 29201-0000


SouthCross Developement Co LLC
Corporation Service Co
5000 Thurmond Mall Blvd
Columbia SC 29201-0000

Kevin O'Brien
Bank of America Plaza
101 South Tryon st
Suite 4000 Charlotte NC 28280


Alston& Bird LLP
101 South Tryon st
Suite 4000
Charlotte NC 28280-4000

Marguerite S Willis
1441 Main St
Suite 1500
PO Drawer 2426
Columbia SC 29202


10

Shook Hardy & Bacon LLP
84 Corporate Woods
10801 Mastin , Suite 1000
Overland Park , Kansas 66210-1697


Nexsen Pruet LLC
1441 Main st
PO Drawer 2426
Columbia SC 29202


Scott C Nehrbass
Foulston & Siefkin LLP
40 Corporate Woods
9401 Indian Creek
Parkway Suite 1050
Overland ,Kansas 66210

11

# Exhibit

Wednesday, August 21, 2002

**Re:**     **SouthCross Surgery Center, L.L.C.**
            **SouthCross Management Group, L.L.C.**

Dear _____:

This letter agreement (this "Letter") briefly describes the joint venture which will develop, own and operate an ambulatory surgery center (the "Facility") in Lancaster County, South Carolina as well as the joint venture which will acquire, develop and own the real property underlying the Facility and other buildings to be included in a medical campus. It also sets forth the terms that will govern certain rights among the persons who choose to participate in each project at this initial stage. If you would like to participate in either project as such a "Founder," as described below, please indicate your agreement to this Letter's terms by completing the information and signing your name where indicated below and returning the completed Letter and a check to Ronald M. Singer, M.D. at the address below.

1. **Establishment of ASC Joint Venture.** SouthCross Surgery Center, L.L.C. (or other suitable name) will be organized as a South Carolina limited liability company (the "*Company*"). The Company will own and operate the Facility in Lancaster County, South Carolina on the surgery center site to be owned and developed by SouthCross Management Group, L.L.C. (or other suitable name) ("SMG"). We plan to lease the space for the Facility from SMG. The Company will be formed as a limited liability company to receive certain tax benefits granted to partnerships while, at the same time, enjoying limited liability for its owners.

The Facility will be constructed to comply with the licensure requirements of the South Carolina Department of Health and Environmental Control (the "Department"), the federal requirements for participation in Medicare, and the certificate of need ("CON") requirements imposed by the Department. Following the receipt of sufficient indications of interest from Founders such as yourself, the Company will promptly commence the CON application process.

2. **Establishment of Real Estate Joint Venture.** SMG will also be organized as a South Carolina limited liability company for the tax and limited liability benefits described above. SMG will develop and own approximately 3 to 5 acres in Lancaster County, South Carolina where the Facility will be located. We expect that some or all of the owners of SMG will also be investors in the Company, but ownership in both the Company and SMG is not required.

3. **Founder's Loans.** This Section describes the terms governing the use of money advanced to the Company to fund its start-up expenses ("Founder's Loans") and the rights of the persons making the Founder's Loans (each, a "Founder"). These expenses will include the legal costs of forming the Company, engaging consultants to further the Company's business plans, submitting the CON application to the Department, preparing the Company's offering documents and other expenses.

343831.3

a.          Purpose. Founder's Loans will pay for the Company's expenses until the Company raises money through the Offering described in Section 5 below. It is contemplated that, assuming that all the Founder's Loans are converted into Units in the Company as explained in Section 3.d, after the Offering, Founders' Units will comprise between 20% and 30% of the outstanding Units in the Company. With the money raised in the Offering, the Company should be able to begin operations.

b.          Amount. Each Founder's Loan will be $15,000. A Founder may make a minimum of one and a maximum of two such Founder's Loans -- $15,000 or $30,000.

In exchange for their past and future services to the Company, Ronald W. Singer, M.D. and Christopher Cozad will each be deemed to have advanced to us Founder's Loans of 15% and 5%, respectively, of the total amount of Founder's Loans made to the Company prior to the Offering. For their ongoing services to the Company, they will also be deemed to have contributed the same percentage of any additional money that the Company raises through a capital call or otherwise before the Offering, unless Founders who have made at least 75% of the total amount of Founder's Loans determine by vote that the services provided by Dr. Singer and Mr. Cozad do not warrant the receipt of such additional interests by them. Founder's Loans deemed to be made by Messrs. Singer and Cozad shall be convertible into Founders' Units as described in Section 3.d below and their Founders' Units not be subject to divestiture under buy-sell events contained within the Company's operating agreement except as required by applicable law.

c.          At-risk Investment. Each Founder's Loan will be made on an "at-risk" basis. If the Company decides not to proceed with the Offering or the Offering does not raise enough money, the Company will repay to each Founder the amount of his or her Founder's Loan minus the Founder's pro rata share of the Company's organizational and development expenses incurred as of that date. An individual Founder may otherwise receive repayment of his or her Founder's Loan before the Offering closes only upon the vote of Founders who have advanced at least 75% of the total Founder's Loans to the Company.

d.          Repayment or Conversion. After the Offering closes, each Founder will have the option either to receive repayment of his or her Founder's Loan from the Company with interest at the rate of 8% or receive for each Founder's Loan one Unit of membership interest in the Company at a substantial discount.

e.          Founder's Rights. In exchange for making a Founder's Loan at this time, each Founder will receive the following benefits:

            (i)      the right to convert a Founder's Loan at a discount into a Unit as described above;

343931.3                                                                                                    SINR.99372

2

(ii) the right to acquire the maximum number of Units that any investor may acquire pursuant to the Offering before the investment of non-Founders in the Company.

(iii) the right to vote on certain material matters for the Company, including the right to define the terms of the Company's capital structure, to determine the amount of the discount to Founders' for converting Founder's Loans into Units, to determine any additional Founder's benefits, and to decide other matters concerning the organization and development of the Company before the closing of the Offering. Decisions made on the foregoing matters will be determined by Founder's holding more than 50% of the total amount of all Founder's Loans, unless otherwise specified in this Letter.

f. Termination of Project. The Founders may elect to terminate the project and liquidate the Company before the Offering is conducted upon the vote of Founders who have made at least 75% of the total amount of Founder's Loans. In such case, the Company will return to each Founder, the amount of his or her Founder's Loan minus the Founder's share of expenses in accordance with Section 3.d.

4. **Founder's Loans to SMG.** The terms for Founder's Loans to SMG will be disclosed in a future document. A person may be a Founder of both the Company and SMG, but is not required to loan money to each entity. Decisions concerning the two entities will be made separately according to each entity's Founder's group.

5. **Offering.** After the receipt of an indication that the Company will likely receive the CON and its determination of the feasibility of the project, the Company will conduct an initial offering of membership interests in the Company (the "Offering") sufficient for the Company to open the Facility. The terms of the Offering will be set forth in a confidential private placement memorandum prepared by the Company's legal counsel in accordance with applicable law.

6. **Location of, and Access to, the Founder's Loans.** The funds raised from this Letter for each entity will be held in a bank selected by Dr. Singer and Christopher Cozad. The funds in each account will be used to organize and develop the Company and SMG according to this Letter. For each entity, Dr. Singer and Mr. Cozad will send a quarterly statement to each Founder showing the deposits to and withdrawals from the account.

7. **Cooperation During Feasibility Process.** To determine the feasibility of the project and to obtain the CON as quickly as possible, each Founder agrees to cooperate in providing case load information requested by the Company's organizers.

8. **Decision To Proceed.** After the feasibility process is completed, the Founders will determine whether sufficient case load exists and whether other circumstances warrant continuation of the project. If we elect not to proceed in accordance with Section 3.f, each Founder shall receive the amount of his or her Founder's Loan, less the Founder's pro rata share of the Company's organizational expenses incurred to that date according to Section 3.d.

9. **Binding Provisions.** The provisions in this Letter are to be considered legally binding agreements which shall survive expiration or termination of this Letter. This Letter does not constitute and shall not be construed as a legally binding agreement on the terms under which the Company will be developed. Rather, this Letter is a binding obligation to explore the acquisition and development together and to spend monies during the investigation of the project's feasibility, including its efforts to obtain the CON. Each Founder who signs this Letter shall be considered a beneficiary of the agreements made in this Letter for enforcement and all other purposes.

10. **Governing Law.** This Letter shall be governed by the laws of the State of North Carolina.

11. **Prior Agreements.** This Letter supersedes any prior agreement regarding the subject matter of this Letter. Any such prior agreement shall not be effective for any purpose.

12. **Confidentiality.** By signing below, you acknowledge that you, the Company and SMG will be exchanging information during the feasibility analysis. Accordingly, you agree not to disclose such information to any third party or otherwise use it for any purpose unrelated to the organization of the Company and SMG or the evaluation, development or funding of the Company, SMG and the Facility.

13. **Non-Circumvention.** In view of the fact that the organization of the entities and the evaluation, development and funding of the entities and the Facility will require that considerable time, effort, expense and expertise be expended by myself and other Founders of the entities, you agree by signing below that for a period of two years following the date of execution of this document, you will not pursue or participate in the development of a project for a health care provider similar to the Facility or a medical campus similar to that contemplated by SMG in the Lancaster or York County, South Carolina area or Mecklenburg or Union County, North Carolina area without involving the Company or SMG, as applicable.

> **SouthCross Surgery Center, L.L.C. and**
> **SouthCross Management Group, L.L.C.**
>
> By:_____
> Ronald W. Singer, M.D.
>
> By:_____
> Christopher Cozad

**Founder's Information:**

Physician's Name: _____

Practice Name: _____

Practice Address: _____

Office Phone: _____

Fax Number: _____

Practice Area: _____

Signature: _____

Date: _____

Amount of Founder's Loan: _____

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

# Exhibit 



# Secretary of State
# Search
## Mark Hammond's Office

| Main Page | What's New | Forms | Fee Schedule | Office Directory | Where Do I Find? | Search |

Office of the South Carolina Secretary of State
Business Filings Division

Information for:

**SOUTHCROSS SURGERY CENTER, LLC**

Check Chariti

Note*** This online database was last updated on 01/07/2005 see our Disclaimer

DOMESTIC / FOREIGN:   Domestic
STATUS:   Good Standing
STATE OF INCORPORATION / ORGANIZATION:   SOUTH CAROLINA
   **For Profit**

## REGISTERED AGENT INFORMATION

REGISTERED AGENT NAME:   CORPORATION SERVICE CO
ADDRESS:   5000 THURMOND MALL BLVD
CITY:   COLUMBIA
STATE:   SC
ZIP:   29201 0000
SECOND ADDRESS:

FILE DATE:   09/24/2002
EFFECTIVE DATE:   09/24/2002
DISSOLVED DATE:

| CORPORATION HISTORY RECORDS | | | |
|---|---|---|---|
| Code | File Date | Comment | |
| LLC - ANNUAL REPORT | 04/21/2004 | LLC ANNUAL REPORT-2003 | |
| AMENDMENT(DOMESTIC) | 03/24/2003 | AMENDMENT-MANAGER MANAGED | |
| DOMESTIC LIMITED LIABILITY COMPANY | 09/24/2002 | DOMESTIC LIMITED LIABILITY CO(AT WILL) | |

Return to Previous Page



# Secretary of State
# Search
## Mark Hammond's Office

| Main Page | What's New | Forms | Fee Schedule | Office Directory | Where Do I Find? | Search |

**Office of the South Carolina Secretary of State**

Business Filings Division

Information for:

### SOUTHCROSS DEVELOPMENT GROUP, LLC

Check Chariti

Note*** This online database was last updated on 01/07/2005 see our Disclaimer

| DOMESTIC / FOREIGN: | Domestic |
| STATUS: | Good Standing |
| STATE OF INCORPORATION / ORGANIZATION: | SOUTH CAROLINA |
| | **For Profit** |

#### REGISTERED AGENT INFORMATION

| REGISTERED AGENT NAME: | CORPORATION SERVICE CO |
| ADDRESS: | 5000 THURMOND MALL BLVD |
| CITY: | COLUMBIA |
| STATE: | SC |
| ZIP: | 29201 0000 |
| SECOND ADDRESS: | |

| FILE DATE: | 09/24/2002 |
| EFFECTIVE DATE: | 09/24/2002 |
| DISSOLVED DATE: | |

| CORPORATION HISTORY RECORDS | | | |
|---|---|---|---|
| Code | File Date | Comment | |
| LLC - ANNUAL REPORT | 04/21/2004 | LLC ANNUAL REPORT-2003 | |
| DOMESTIC LIMITED LIABILITY COMPANY | 09/24/2002 | DOMESTIC LIMITED LIABILITY CO(AT WILL) | |

**Return to Previous Page**



# Secretary of State
# Search
## Mark Hammond's Office

| Main Page | What's New | Forms | Fee Schedule | Office Directory | Where Do I Find? | Search |

Office of the South Carolina Secretary of State
Business Filing Profile

Information for:

**SOUTHCROSS MANAGEMENT GROUP, LLC**

Check Charities

Note*** This online database was last updated on 01/07/2005 see our Disclaimer

| DOMESTIC / FOREIGN: | Domestic |
| STATUS: | Good Standing |
| STATE OF INCORPORATION / ORGANIZATION: | SOUTH CAROLINA |
| | **For Profit** |

## REGISTERED AGENT INFORMATION

| REGISTERED AGENT NAME | CORPORATION SERVICE CO |
| ADDRESS: | 5000 THURMOND MALL BLVD |
| CITY: | COLUMBIA |
| STATE: | SC |
| ZIP: | 29201 0000 |
| SECOND ADDRESS: | |

| FILE DATE: | 09/24/2002 |
| EFFECTIVE DATE: | 09/24/2002 |
| DISSOLVED DATE: | |

| CORPORATION HISTORY RECORDS | | | |
|---|---|---|---|
| Type | File Date | Comment | |
| AMENDMENT(DOMESTIC) | 03/24/2003 | AMENDMENT-MANAGER MANAGED | |
| DOMESTIC LIMITED LIABILITY COMPANY | 09/24/2002 | DOMESTIC LIMITED LIABILITY CO(AT WILL) | |

**Return to Previous Page**



| Account | Serial | Sequence | Paid Date | Amount |
|---|---|---|---|---|
| 1881910592 | 42 | 0027524038 | 10/10/2002 | $15,000.00 |

Page 1 of 1

5/14/2004

**Founder's Information:**

Physician's Name: _Gregory A. Miller_

Practice Name: _Rock Hill GYN AND OB_

Practice Address: _1721-05 Ebenezer Rd Suite 145 Rock Hill SC_

Office Phone: _803 328 - 2401_                    _29732_

Fax Number: _803 328 - 1030_

Practice Area: _York, Lancaster Co.'s, South Charlotte (Pineville)_

Signature: _____

Date: _9/16/01_

Amount of Founder's Loan: _15,000_

Please return this signed Letter along with a check in the amount of your Founder's Loan prior to midnight, Monday September 16, 2002 to:



If necessary, you may also contact Christopher Cozad at 704-367-9933 in order to arrange pickup.

**THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.**

343831.3

5

SINR.99372

SC 00334

**Founder's Information:**

Physician's Name: TERRY EZELL, MD

Practice Name: CAROLINA UROLOGY CENTER, PA

Practice Address: 1780 MEDICAL PARK DR.
ROCK HILL, SC 29732

Office Phone: 803-327-1116

Fax Number: 803-327-6872

Practice Area: ROCK HILL, LANCASTER, PINEVILLE

Signature: 

Date: 9/15/02

Amount of Founder's Loan: $15,000.00

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

▮▮▮▮▮▮▮▮▮▮

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

343831.3

SINR.99372

SC 00218

**Founder's Information:**

Physician's Name: Richard R. Gillespie, MD

Practice Name: Cornerstone ENT

Practice Address: 3135 Springbank Ln Suite 200

Office Phone: 704-752-7575

Fax Number: 704-752-7576

Practice Area: Arboretum, Southeast Charlotte

Signature: 

Date: 9/14/02

Amount of Founder's Loan: $ 15,000

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

343831.3

SINR.99372

SouthCross 1044

**Founder's Information:**

Physician's Name: _Wilbur D. Livingston Jr MD_

Practice Name: _Carolina Urology Center_

Practice Address: _1780 Medical Park Dr Rock Hill SC_
Also Pineville & Lancaster office

Office Phone: _803 - 327 - 7778_

Fax Number: _803 - 327 - 6872_

Practice Area: _Pineville N.C., Lancaster S.C., Rock Hill SC_

Signature: _Wilbur D. Livingston Jr. MD_

Date: _14 Sept 02_

Amount of Founder's Loan: _$15,000.00_

Please return this signed Letter along with a check in the amount of your Founder's Loan to:



THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

343831.3

5

SINR.99372

SouthCross 1039

Founder's Information:

Physician's Name: _____CHRISTIAN E. MAGURA_____

Practice Name: ____CAROLINA  UROLOGY  CENTER____

Practice Address: ___Building 400 - 10620 Park Rd  Suite 218 CLT NC 28210___

Office Phone: _____704-543-7186_____

Fax Number: _____704  543-7094_____

Practice Area: __SOUTH MECH     LANCASTER + YORK Co.__

Signature:  _Christian J Magura_

Date: _____9/14/02_____

Amount of Founder's Loan: _____15,000_____

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

343831.3

5

SINR.99372

SouthCross 1049

Founder's Information:

Physician's Name: _TIMOTHY A. GASEWSKI M.D._

Practice Name: _Urology Specialists of the Carolinas_

Practice Address: _1918 Randolph Road, Suite 400_
_Charlotte, 28207_

Office Phone: _704-547-1495_

Fax Number: _704-547-1861_

Practice Area: _Charlotte, N. South, University._

Signature: 

Date: _9/16/02_

Amount of Founder's Loan: _15,000.00_

Please return this signed Letter along with a check in the amount of your Founder's Loan prior to midnight, Monday September 16, 2002 to:

~~SouthCross Surgery Center, LLC~~
~~c/o ████ W. Sharon Amity████~~
~~Suite ███ Bob ██████████~~
~~Charlotte, NC █████~~

If necessary, you may also contact Christopher Cozad at 704-367-9933 in order to arrange pickup.

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

SINR.99372

343831.3

5

**Founder's Information:**

Physician's Name: _Kevin C. Shandera, M.D._

Practice Name: _Urology Specialists of the Carolinas_

Practice Address: _10512 Park Rd, Suite #115 Charlotte_
_28210_

Office Phone: _(704) 541.8207_

Fax Number: _(704) 540.8288    Pager (704) 515.2268_

Practice Area: _Urology, Incontinence, Female Urology_

Signature: _Kevin C. Shandera, MD_

Date: _9.17.02_

Amount of Founder's Loan: _#15,000.⁰⁰_

Please return this signed Letter along with a check in the amount of your Founder's Loan prior to midnight, Monday September 16, 2002 to:



If necessary, you may also contact Christopher Cozad at 704-367-9933 in order to arrange pickup.

**THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.**

343831.3                                           SINR.99372

5

SC 00370

**Founder's Information:**

Physician's Name: _Christopher B. Benson_

Practice Name: _Rock Hill Gynecological and Obstetrical_

Practice Address: _1721-05 Ebenezer Rd., Suite 145, Rock Hill, SC 297:_

Office Phone: _803  328  9700_

Fax Number: _803  328  1030_

Practice Area: _Rock Hill  +  Fort Mill, SC ; Mercy Swt_

Signature: _Chris Benson_

Date: _14 Sep 02_

Amount of Founder's Loan: _15,000._

Please return this signed Letter along with a check in the amount of your Founder's Loan prior to midnight, Monday September 16, 2002 to:



If necessary, you may also contact Christopher Cozad at 704-367-9933 in order to arrange pickup.

**THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.**

343831.3                                5                                SINR.99372

**Founder's Information:**

Physician's Name: _THOMAS H. PHILLIPS, MD_

Practice Name: _UROLOGY SPECIALISTS OF THE CAROLINAS PLLC_

Practice Address: _1450 MATTHEWS TOWNSHIP PKWY SUITE 280 MATTHEWS, NC_

Office Phone: _704-841-8877_

Fax Number: _704-841-8188_          _28105_

Practice Area: _MATTHEWS_

Signature:  _MD_

Date: _9-17-2_

Amount of Founder's Loan: _$15,000_

Please return this signed Letter along with a check in the amount of your Founder's Loan prior to midnight, Monday September 16, 2002 to:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓

If necessary, you may also contact Christopher Cozad at 704-367-9933 in order to arrange pickup.

**THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.**

343831.3                         5                         SINR.99372

SC 00355

**Founder's Information:**

Physician's Name: *ROBERT CRAIG McCLELLAND, MD*

Practice Name: *Rock Hill Gyn/OB Assoc. PA*

Practice Address: *1727-05 Ebenezer Rd* *ALSO FT Mill office SC*
*Rock Hill, SC 29732*

Office Phone: *803 328-9700*

Fax Number: *803 328-1030*

Practice Area: *Rock Hill, FT Mill, York Lancaster Chester*

Signature: 

Date: *15 SEP 02*

Amount of Founder's Loan: *$30,000*

Please return this signed Letter along with a check in the amount of your Founder's Loan prior to midnight, Monday September 16, 2002 to:

If necessary, you may also contact Christopher Cozad at 704-367-9933 in order to arrange pickup.

**THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.**

## Founder's Information:

Physician's Name: Daron J. Smith

Practice Name: Cornerstone Ear, Nose & Throat

Practice Address: 1107 Reynolds St., Monroe NC 28112

Office Phone: 704-289-8220

Fax Number: 704-289-9195

Practice Area: Monroe, + South Charlotte

Signature: 

Date: 9/12/02

Amount of Founder's Loan: $30,000.00

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

███████████████████
███████████████████

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

SouthCross 1027

Founder's Information:

Physician's Name: _THOMAS DOUGLAS_____

Practice Name: _CAROLINA UROLOGY CENTER, P.A_____

Practice Address: _1780 MEDICAL PARK DRIVE_____

Office Phone: _803 327 1116_____

Fax Number: _803 327 6872_____

Practice Area: _ROCK HILL, SC ; LANCASTER, SC,_____
_____PINEVILLE, NC ( UROLOGY )_____

Signature: 

Date: _8/13/02_____

Amount of Founder's Loan: _15 000 00_____     _Check # 0172_

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

343831.3

5

SINR.99372

SouthCross 1033

Founder's Information:

Physician's Name: _THOMAS DOUGLAS_

Practice Name: _CAROLINA UROLOGY CENTER, PA_

Practice Address: _1780 MEDICAL PARK DRIVE_

Office Phone: _803 327 1116_

Fax Number: _803 327 6872_

Practice Area: _ROCK HILL, SC; LANCASTER, SC, PINEVILLE, NC  (UROLOGY)_

Signature: _Thomas A. ___

Date: _8/13/02_                     Check # 0172

Amount of Founder's Loan: _15 000 00_

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

> Ronald M. Singer, M.D.
> 3517 High Ridge Road
> Charlotte, NC  28270

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

SINR.99372

SouthCross 0223

FROM : ROBERT J TRETOLA          PHONE NO. : 8032850556          Mar. 04 2004 12:04PM P7

Founder's Information:

Physician's Name: _THOMAS DOUGLAS_

Practice Name: _CAROLINA UROLOGY CENTER, PA_

Practice Address: _1780 MEDICAL PARK DRIVE_

Office Phone: _803 327 1116_

Fax Number: _803 327 6872_

Practice Area: _ROCK HILL, SC; LANCASTER, SC, PINEVILLE, NC (UROLOGY)_

Signature: 

Date: _8/13/02_

Amount of Founder's Loan: _15 000.00_          _Check # 0172_

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A
SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST
IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL
DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE
COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE
DISCLOSURE DOCUMENTS.

343831.3                                 5                        SINR.99372

## Founder's Information:

Physician's Name:   _WILLIAM A. McCLELLAND, MD_

Practice Name:   _CORNERSTONE EAR, NOSE & THROAT_

Practice Address:   _1107 REYNOLDS ST., MONROE, NC 28112_

Office Phone:   _704-289-8220_

Fax Number:   _704-289-9195_

Practice Area:   _① MONROE, DRAWING ALSO FROM ANSON CO + SOU_
_② ARBORETUM / SOUTH EAST CHARLOTTE          CAROLINA._

Signature:   

Date:   _9/5/02_

Amount of Founder's Loan:   _$30,000.00_

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

██████████████

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

3438313

5

SINR.99372

SC 00320          000276



## Founder's Information:

Physician's Name: _Daron J. Smith_

Practice Name: _Cornerstone Ear, Nose & Throat_

Practice Address: _1107 Reynolds St., Monroe NC 28112_

Office Phone: _704-289-8220_

Fax Number: _704-289-9195_

Practice Area: _Monroe, & South Charlotte_

Signature: 

Date: _9/12/12_

Amount of Founder's Loan: _$30,000.00_

Please return this signed Letter along with a check in the amount of your Founder's Loan to:

███████████
███████████████
█████████████

THIS LETTER DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, SECURITIES. NO PERSON MAY INVEST IN THE COMPANY UNLESS AND UNTIL THEY HAVE RECEIVED THE FULL DISCLOSURE DOCUMENTS AND THEIR INVESTMENT HAS BEEN ACCEPTED BY THE COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE DISCLOSURE DOCUMENTS.

343831.3

SINR.99372

000266    SC 00375

# Exhibit 

**From:**  Christopher Cozad

*7 multi chem*

**To:**  Chris Benson; Bruce Cohen; Rick Gillespie; Daron Smith; Marty Rosenberg; David.Barkley@smtpout.mac.com; Terry Ezell; David Kingery; Brad Weisner; Ron Singer; Tom Douglas; David Wright; Barbara Rowland; Kevin Shandera; Alan Ward; Ted Garcia; Tim Gajewski; Tom Phillips; Greg Miller; Bill McClelland; Sandy Peretsman; Craig McClelland; Priya Bajaj; Bob Anderson

**Date:**  4/2/03 2:52:12 PM

**Subject:** Urgent - Ownership documents

---

All,

We have formally returned our responses to the SC DHEC request for additional information as of today, April 02, 2003. It is critical that we have your signed ownership documents in place immediately. You should all have copies of both the single page document titled "Operating Agreement Signature Page", the 24 page "Subscription Agreement" (that requires your attention on pages 1, 5-10), as well as the "Summary of Provisions" page )explaining highlights of the agreement).

Some of you have already returned these documents to me. Thank you. As I have explained previously, this is not a capital call, it is merely a transference of your status from "founder" to member. At this time, a one to one ratio between founder units and member units has been established. Once our CON is granted, we can formally adopt an Operating Agreement that specifies further details.

Please contact me ASAP with any questions. I must stress the urgency of the timing of the signing of these documents. Please sign and date them as of today, April 02, 2003. As always, you can call or email me to pick up copies of your signed documents, or fax the signed pages to me at 704-367-0022.

Thank you,

Christopher

# Exhibit

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

**ORIGINAL FILED**

FEB 18 2004

LARRY W. PROPES, CLERK
COLUMBIA, SC

SOUTHCROSS SURGERY CENTER, L.L.C.,

Plaintiff,

v.

COMMUNITY HEALTH SYSTEMS, INC.;
LANCASTER HOSPITAL CORPORATION
(d/b/a Springs Memorial Hospital);
SPORTSOUTH L.L.C.; DANIEL MCKAY;
ROBERT J. TRETOLA, M.D.; DIANE
BRACKETT-RIVERS; and DIANE
BRACKETT COMPANY, INC.,

Defendants.

Civil Action No. _____

**0   04   05 1 0   22**

## COMPLAINT

COMES NOW Plaintiff SouthCross Surgery Center, L.L.C., and for its claims against Defendants Community Health Systems, Inc., Lancaster Hospital Corporation, Inc. d/b/a/ Springs Memorial Hospital, SportSouth L.L.C., Daniel McKay, Robert J. Tretola, M.D., Diane Brackett-Rivers and Diane Brackett Company, Inc., states and alleges as follows:

## THE PARTIES

1.      SouthCross Surgery Center, L.L.C. ("SouthCross"), is a South Carolina limited liability company which, before it was formally organized, did business as "the ASC Joint Venture." The individual members of SouthCross include:   Ronald W. Singer, M.D.; Christopher Cozad; Priya Bajaj, M.D.; David A. Barkley, M.D.; Christopher B. Benson, M.D.; Thomas Douglas, M.D.; Terry Ezell, M.D.; Timothy A. Gajewski, M.D.; Ted Garcia, M.D.; Richard R. Gillespie, M.D.; William A McClelland, M.D.; Robert Craig McClelland, M.D.; Gregory A. Miller, M.D.; Miller Investors; Samuel J. Peretsman, M.D.; Thomas H. Phillips, M.D.; Barbara L. Rowland, M.D.; Kevin C. Shandera, M.D.; Daron J. Smith, M.D.; Bradley K.

410853v1

Weisner, M.D.; and David K. Wright, M.D.  Spartanburg Regional Healthcare System of Spartanburg, South Carolina, is an entity member of SouthCross.

2.    Lancaster Hospital Corporation, Inc. d/b/a/ Springs Memorial Hospital ("Springs Memorial") is a Delaware corporation with its principal place of business in South Carolina and can be served through its registered agent, Corporation Services Company, at its registered office at 5000 Thurmond Mall Boulevard, Columbia, South Carolina 29201.  Springs Memorial is a 194-bed hospital facility located in Lancaster, South Carolina.

3.    Springs Memorial is wholly owned by Community Health Systems, Inc. ("CHS"), of Brentwood, Tennessee.  CHS operates acute care hospitals in non-urban markets, primarily in the Southeastern and Southwestern United States.  CHS owns 72 hospitals in 22 states.  CHS can be served through its registered agent in South Carolina, Randy M. Crowder, 109 Hilton Street, Greer, South Carolina  29650-1630.

4.    SportSouth L.L.C. ("SportSouth") is a South Carolina limited liability company with its principal place of business in South Carolina, and can be served through its registered agent CT Corporation System, at its registered office at 75 Beattie Plaza, Two Insignia Financial Plaza, Greenville, South Carolina 29601.  SportSouth was formed in or about January of 2003 to purchase land in Lancaster County, South Carolina, and has entered into a lease of that property for purposes of an ambulatory surgery facility proposed by Springs Memorial.

5.    Daniel McKay ("McKay") resides in South Carolina and can be served at his residence at 2789 Avelon Road, Lancaster, South Carolina.  McKay is the Chief Executive Officer of Springs Memorial Hospital and, until recently, owned an 8.33% share in SportSouth.

6.    Robert J. Tretola, M.D. ("Tretola"), is a physician who resides in South Carolina and, before he voluntarily withdrew, was an investor and founder in the ambulatory surgery,

2

center joint venture that eventually became SouthCross. Tretola works or has staff privileges at Springs Memorial Hospital. Tretola is one of three managers of SportSouth, in which he owns an 8.33% interest. Tretola can be served at his residential address, 1933 Tara Trail, Lancaster, South Carolina 29720-8502.

7.      Diane Brackett-Rivers ("Rivers") resides in North Carolina and is one of three managers of SportSouth, in which she owns an 8.33% interest. Rivers can be served at her residential address, 13027 Whisper Creek Drive, Charlotte, North Carolina 28277-1813.

8.      Diane Brackett Company, Inc. ("Brackett Company") is a North Carolina limited liability company that specializes in medical facility and real estate development, does business in South Carolina, and may be served through its registered agent, Diane Brackett-Rivers, at its registered office's address, 717 S. Torrence Street, Suite 101, Charlotte, North Carolina, 28204.

## JURISDICTION

9.      This Court has jurisdiction over the parties and the subject matter, pursuant to, inter alia, 28 U.S.C. §§ 1331 and 1337, and venue is proper in the United States District Court for the District of South Carolina, pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

10.      Since on or about the winter of 2000-01 through the winter of 2001-02, Ronald W. Singer, M.D. ("Singer") and Christopher Cozad ("Cozad") had been exploring the idea of forming a physician-owned medical campus in South Carolina that would include an ambulatory surgery center. Their efforts included making contact with various South Carolina and North Carolina hospital and health systems, physicians, consultants and real estate developers.

11.      Beginning on or about the spring of 2002, Singer and Cozad stepped up the pace of their efforts and moved forward with forming a joint venture with the purpose of establishing

3

Founders, including Tretola. All of these expenses charged to the Founders' accounts were attributable or related to the surgery center or the land underlying it.

92.    Regarding selection of a real estate site, the ASC Joint Venture began to focus on the Queensgate site, as opposed to the Crossland site. Again, the two sites were within one-half mile of each other, near the intersection of Highways 160 and 521.

93.    During October 2002, Tretola continued to show enthusiasm for the ASC Joint Venture and purported to be making efforts to work political, media and other connections to raise awareness and gain favor for the initiative, as well as look into real estate possibilities. He even set up a presentation at his home, on or about October 12, 2002, at which Cozad, Singer and Tretola all made speaking presentations in support of the entire scope of the projects before various Lancaster County community leaders. Tretola continued to fret, however, over potential resistance or competition from Springs Memorial Hospital and the possibility that Governor Hodges might not win reelection, which he believed would make it more difficult for the ASC Joint Venture to meet its goals.

94.    On election day, November 5, 2002, Tretola sent an email to Cozad and Singer stating "I am resigning my part in ASC as of today" and requesting that Cozad and Singer "refund" his $15,000 Founder's Loan. (Ex. B.) Tretola did not specifically invoke Paragraph 3.c. of the Founder's Letter Agreement, which required a vote of "Founders who have advanced at least 75% of the total Founder's Loans" in order for an individual Founder to receive any repayment. (Ex. A, at ¶ 3.c.)

95.    On November 15 and 20, 2002, Tretola reiterated via email to Cozad and Singer that he was no longer interested in being part of the ASC Joint Venture and again

17

32.    The Founder's Letter Agreement was intended to be a "binding agreement" as to "the terms that . . . govern certain rights among the persons who choose to participate in each project at this initial stage" (Ex. A, opening paragraph), and to "explor[e] the acquisition and development together and to spend monies during the investigation of the project's feasibility, including its efforts to obtain the CON." (Ex. A, at ¶9.)

33.    Each Founder's check was to be in increments of $15,000, with each $15,000 investment constituting a "Founder's Loan." (Ex. A, at ¶3.)

34.    Paragraph 3 of the Founder's Letter Agreement was to govern the "use of" the Founder's Loan moneys and the "rights of the persons making the Founder's Loans."

35.    "In exchange for their past and future services to" the ASC Joint Venture, Singer and Cozad were to be "deemed to have advanced . . . Founder's Loans of 15% and 5%, respectively, of the total amount of Founder's Loans made to the [ASC Joint Venture] prior to the Offering." (Ex. A, at ¶3.b.)

36.    The Founder's Letter Agreement further contemplated that after the ASC Joint Venture limited liability company had been formed, the CON application had been filed, and the limited liability company received "an indication that [it] will likely receive the CON" and made a "determination of the feasibility of the project," the ASC Joint Venture limited liability company would "conduct an initial offering of membership interests in the Company sufficient for the Company to open the facility." (Ex. A, at ¶5.)

37.    The Founder's Letter Agreement provided that, after this initial offering closed, each Founder would have the option of either converting each of his or her "Founder's Loan" into "one Unit of membership interest" in the limited liability company formed as part of

ı

7

# Exhibit

Exhibit 5

OPERATING AGREEMENT

OF

SOUTHCROSS SURGERY CENTER, LLC

(A South Carolina Limited Liability Company)

DATED: _____, 2003

THE LLC MEMBERSHIP INTERESTS REPRESENTED BY THIS OPERATING AGREEMENT HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER THE SOUTH CAROLINA SECURITIES ACT IN RELIANCE UPON EXEMPTIONS UNDER THOSE ACTS. THE SALE OR OTHER DISPOSITION OF THE UNITS IS RESTRICTED AS STATED IN THIS OPERATING AGREEMENT, AND IN ANY EVENT IS PROHIBITED UNLESS THE COMPANY RECEIVES AN OPINION OF COUNSEL SATISFACTORY TO IT AND ITS COUNSEL THAT SUCH SALE OR OTHER DISPOSITION CAN BE MADE WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE SOUTH CAROLINA SECURITIES ACT. BY ACQUIRING THE UNITS REPRESENTED BY THIS OPERATING AGREEMENT, THE MEMBERS REPRESENT THAT THEY WILL NOT SELL OR OTHERWISE DISPOSE OF THEIR UNITS WITHOUT REGISTRATION OR OTHER COMPLIANCE WITH THE AFORESAID ACTS AND THE RULES AND REGULATIONS ISSUED THEREUNDER.

SC 00^

SHOULD NOT VIEW AN INVESTMENT IN THE UNITS AS A METHOD BY WHICH TO SHELTER TAXABLE INCOME.

(v)    Accounting Method. The Company reports its income on an accrual basis. Under the accrual method, the Company will include in its income payments which it has not yet received and expenses which it has not yet paid. The items of income taken into account in a particular year may substantially exceed the actual cash receipts for such year and, therefore, affect the cash available for distribution to Members. Members will be required to include on their personal tax returns their distributive share of such income, whether or not any cash distributions are made by the Company.

(vi)    Audit of the Company's Tax Returns. An examination of the Company's tax returns could result in adjustments to the tax consequences initially reported by the Company and could possibly result in audits of the Members' personal income tax returns. Any such audits could involve items not related to investment in the Company as well as the Company's items.

(vii)    Tax Legislation. There are frequent and sometimes retroactive changes in tax laws, regulations, rulings and interpretations of existing statutes by court decision may also change the law with retroactive effect. It is possible that there will be adverse changes in the law or interpretations thereof during the term of the Company which would materially and adversely affect the economic consequences of the investment.

XII.    Return of Distributions. A Member's capital is subject to the risks of the Company's business. Assuming that the Company is operated in accordance with the terms of the Operating Agreement, a Member will not be liable for a liability to or for the Company in excess of its total Capital Contribution, a Member's proportionate share of the undistributed profits of the Company, and the amount of certain Distributions improperly received from the Company as provided by the Act. To the extent that cash distributed to a Member constitutes a return of all or a portion of such Member's capital contribution, even though such distribution was rightfully made, such Member will be liable for any sum not in excess of such return of capital, together with interest thereon, necessary to discharge the Company's liability to creditors who extended credit or whose claims arose before such return. A Member's right to withdraw is limited.

XIII.    Securities Law Matters; Reliance on Exemptions from South Carolina Securities Laws. The United States and South Carolina state securities laws each contain exemptions which permit an issuer of securities such as the Company to issue interests in an entity without registration of the securities to be sold under either federal or state laws. The ability to utilize an exemption which is available under state or federal securities laws is premised on a number of conditions which include, among other conditions, that the securities not be sold to more than a certain number of purchasers, securities not be sold pursuant to a public offering, and that certain information and filing requirements are met with respect to the offering. The Company, in selling interests in the Company pursuant hereto, intends to rely on an exemption from registration

22

Name_____

Number_____

## SUBSCRIPTION AGREEMENT

### SouthCross Surgery Center, LLC

1.     Subscription.  The undersigned Subscriber hereby applies for the purchase of units (the **"Units"**) of limited liability company interests in SouthCross Surgery Center, LLC, a South Carolina limited liability company (the **"Company"**).  The Company will operate an ambulatory surgery center in Lancaster County, South Carolina (the **"Facility"**).

The undersigned tenders this Subscription Agreement for the purchase of _____ Unit(s) at a per Unit purchase price of $15,000.

2.     Certain Representations of all Subscribers.  In connection with, and in consideration of, the sale of the Units to Subscriber, Subscriber hereby represents and warrants to the Company and its officers, managers, employees, agents, partners and Members that Subscriber:

      a.     realizes that the Company will be a newly formed entity having no operating history;

      b.     realizes that a purchase of the Units represents a speculative investment involving a high degree of risk including, without limitations, those risks set forth in Exhibit "A", attached hereto;

      c.     can bear the economic risk of an investment in the Units for an indefinite period of time, can afford to sustain a complete loss of such investment, has no need for liquidity in connection with an investment in the Units, and can afford to hold the Units indefinitely;

      d.     realizes that there is presently no market for the Units and that there are significant restrictions on the transferability of the Units;

      e.     realizes that the Units have not been registered for sale under the Securities Act of 1933, as amended (the **"Securities Act"**), nor applicable state securities laws (the **"State Laws"**), and may be sold only pursuant to registration under the Securities Act and State Laws, or an opinion of counsel that such registration is not required;

      f.     is, either individually or together with a qualified purchaser representative who is unaffiliated with and is not compensated by the Company or any affiliate or selling agent of the Company, directly or indirectly (**"Purchaser Representative"**), experienced and knowledgeable in

1

ENTITIES

___ e.    Subscriber is an entity, and is an "Accredited Investor" as defined in Rule 501(a) of Regulation D under the Securities Act. This representation is based on the following (check one or more, as applicable):

___        (1)    Subscriber (or, in the case of a trust, Subscriber's trustee) is a bank or savings and loan association as defined in §§ 3(a)(2) and 3(a)(5)(A), respectively, of the Securities Act acting either in its individual or fiduciary capacity.

___        (2)    Subscriber is an insurance company as defined in § 2(13) of the Securities Act.

___        (3)    Subscriber is an investment company registered under the Investment Company Act of 1940 or a business development company as defined in § 2(a)(48) of that Act.

___        (4)    Subscriber is a Small Business Investment Company licensed by the United States Small Business Administration under § 301(c) or (d) of the Small Business Investment Act of 1958.

___        (5)    Subscriber is a plan established and maintained by a state, its political subdivisions or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, if such plan has total assets in excess of $5,000,000.00.

___        (6)    Subscriber is a pension or profit-sharing trust (other than a pension or profit-sharing trust of the Company, a self-employed individual retirement plan or individual retirement account) and Subscriber is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") and either (check one or more, as applicable):

___            (a)    The investment decision is made by a plan fiduciary, as defined in § 3(21) of ERISA, which is either a bank, savings and loan association, insurance company or registered investment adviser; or

___            (b)    The employee benefit plan has total assets in excess of $5,000,000.00; or

___            (c)    The plan is a self-directed plan with investment decisions made solely by persons who are "Accredited Investors" as defined under the Securities Act.

___        (7)    Subscriber is a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940.

___        (8)    Subscriber is an organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the Units offered by the Company, and has total assets in excess of $5,000,000.00.

SC 00341

# Exhibit

Agreement and pay to SouthCross Surgery Center, L.L.C. a "Founder's Loan" of $15,000 for

one share, or $30,000 for two shares. (See Exhibit. E, Letter Agreement executed by Robert J.

Tretola, Sept. 12, 2002, at pp. 1-2). Approximately 30 physicians became Founders by signing

letter agreements and paying to SouthCross the requisite fee.

9.    Portions of the Letter Agreement relevant to this motion for summary judgment

include, *inter alia*, the following:

a.    Paragraph 1 of the Letter Agreement provides that SouthCross Surgery

Center, L.L.C. planned to "own and operate" an ambulatory surgery center (defined as

"the Facility" and sometimes referred to as ASC) in Lancaster County, South Carolina.

(Letter Agreement, introductory paragraph and ¶ 1).

b.    Paragraph 2 of the Letter Agreement states that SouthCross Management

Group, L.L.C. planned to own and develop "approximately 3 to 5 acres in Lancaster

County, South Carolina where the Facility will be located." (Letter Agreement, ¶ 2). The

Letter Agreement, however, only provided for Founders to make an investment in

SouthCross Surgery Center, L.L.C., and any investment in SouthCross Management

Group, L.L.C. would be detailed in a future agreement. (Letter Agreement, ¶ 4).

c.    SouthCross Surgery Center, L.L.C. agreed to "promptly commence" the

certificate of need ("CON") application process in accord with the licensure requirements

of the South Carolina Department of Health and Environmental Control "[f]ollowing the

receipt of sufficient indications of interest from Founders such as yourself." (Letter

Agreement, ¶1).

d.    The Founders' Loans would be provided to SouthCross Surgery Center,

L.L.C. "to fund its start-up expenses . . . [including] legal costs of forming the Company,

engaging consultants to further the Company's business plans, submitting the CON

# Exhibit 7

| Request Number | Production Sought | Initial Response | Additional Response/Clarification Available |
|---|---|---|---|
| 15 | Explain calculation by which plaintiff's pro rata share of expenses was $3,735.29 | Objected (overly broad, relevance) Referred plaintiff to document previously produced, from which requested information may be derived | Direct plaintiff to documents previously produced with bates number SC 00018, and the documents following it. This document shows how plaintiff's ownership share was calculated to be 2.45%, plaintiff's $15,000 contribution divided by $612,000 total investments. Document numbered SC 1659, previously produced, contains discussion of Tretola's disbursement indicating that his $15,000 contribution is reduced by the 20% to account for the service contribution put forward by Singer and Cozad to begin the project (commonly called "sweat equity"). |

**First Request for Production**

| Request Number | Production Sought | Initial Response | Additional Response/Clarification Available |
|---|---|---|---|
| 2 | Produce all letters of intent, letters of agreement, agreements, contracts, correspondence or other documents evidencing offers/agreements between any other person or entity and any of the Defendants relating to participation as an investor, owner, member or lender in development of an ambulatory surgery center in Lancaster County, South Carolina | Objected (overly broad, relevance) Agreed to produce | Documents previously produced and bates numbered SC 00150 – SC 00438 contain letter agreements with founders, subscription agreements with Founders and Spartanburg option agreement. A form letter agreement was also previously produced SC 00002 – SC 00005; SC 00131 – SC 00133; SC 00135 – SC 00138; SC 00140 – SC 00143; and SC 00145 – SC 00148. |

139520v2

# Exhibit



Sunday, March 9, 2003



Robert Tretola, M.D.

RE:    **Return of Founders' Proceeds**

Dear Dr. Tretola:

Please find enclosed a check in the amount $11,264.71 representing your Founder's Loan of $15,000.00 to SouthCross Surgery Center, L.L.C. (the "Company") less a pro rata reduction of $3,735.29 for expenses incurred by the Company to date in pursuing its project. Please note that, as you are aware, the Company is under no obligation whatsoever to return your funds at this time and is doing so purely as an accommodation to you. This accommodation is all the more remarkable in that we have recently learned that you are in direct breach of the covenant not to compete set forth in the Company's Founder's Agreement (the "Agreement"). Please be advised that the Company has no intention whatsoever of waiving its rights under the Agreement and has instructed legal counsel to act accordingly.

The enclosed check may be cashed for a period of 15 calendar days from the date of this letter.    **By cashing this check, you and your successors, heirs, personal representatives and assigns (i) waive all past, present or future claims, whether known or unknown, asserted or unasserted, against the Company and its current and former managers, officers, participants, employees, and agents with respect to your participation in the Company as a Founder; and (ii) acknowledge that the terms of the Agreement, including without limitation Section 13, remain applicable and in full force and effect.**

Very Truly Yours,

Ron Singer, M.D.

Christopher Cozad

370860v1                                                                    SINR.99372

# Exhibit 9

www.fortmilltimes.com

# FORT MILL TIMES

Exhibit #10

urrent
emp:
45

5-Day Forecast

**WEDNESDAY, MARCH 17, 2004**

See it
in the
same
format
as the newspaper

**Your News**

HOME
News
Education
Business
Religion
Obituaries
Opinions
Sports
LifeTimes
ShowTimes
Classifieds
Calendar

**24-Hour News**

Top Story
Nation
World
Sports
Politics
Business
Health & Science
Entertainment
Technology

**Services**

Subscribe
Place An Ad
Advertising Rates
Special Sections
Weddings
Engagements
Anniversaries

**Contact Us**

Talk Back
Send Us A Letter
Send Us News
About Us
Office & Staff

## TimesNews

### Doctors sue Springs Memorial Hospital

Email this story · Print this story
Subscribe to the Times · Advertise in the Times

**By Mac Banks Fort Mill Times**
*(Published March 11, 2004)*

INDIAN LAND--The dispute over who may open an outpatient surgery center in Indian Land has ignited a legal battle that could delay construction of any center in the Panhandle.

SouthCross Surgery Center, comprised of a group of doctors from North and South Carolina, is suing Springs Memorial Hospital after state officials granted Springs Memorial Hospital's request to build a surgery center in Indian Land and denied SouthCross's similar request.

The lawsuit, and an ongoing appeal of the state's decision, could delay Springs Memorial Hospital's construction of its surgery center from April to this fall, but Springs officials said they don't know for certain.

SouthCross' lawsuit claims that Springs Memorial Hospital, its parent company, Community Health Systems Inc. of Brentwood, Tenn., Springs physician Robert Tretola, and CEO Dan McKay practiced "inappropriate" and "illegal actions" during their application process with the state Department of Health and Environmental Control (DHEC), which must approve all medical facilities.

SouthCross claims in its lawsuit that Tretola, who used to work with their investors, divulged insider information to Springs officials, who then used that information against them with DHEC. The lawsuit also claims that McKay set out to block SouthCross's application.

SouthCross is asking for damages in excess of $15 million.

"It didn't have to happen," said Christopher Cozad, director of project development for SouthCross. "We have asked them politely to back away and choose not to persist in this behavior."

Springs' CEO McKay denies the claims in SouthCross's lawsuit, and he added that Springs is considering a countersuit.

"It is an example of desperate people," McKay said. "DHEC has made their opinion. We just want to get moving forward with our project. They need to respect that."

Meanwhile, SouthCross is also appealing DHEC's decision with an administrative law judge.

Cozad said they would possibly drop their lawsuit against Springs Memorial if DHEC's decision were reversed and

**News Search**

Enter Keywords:

Current

Search

**Advertisement**



VOTE

Find out all you need to know about the bond referedum.

★★★★★★★★★★

Get the results online and in next week's Fort Mill Times, set to hit the stands early next Wednesday.

3/22/04 1:30 PM

**Links**
**Attractions**
**Local History**
**Local Links**

SouthCross were able to build an outpatient surgery center of its own.

"The point here is, we have attempted to do good business and we have been told we can't," Cozad said. "Now we are fighting back. Our goal is to build a surgery center."

Over the past few weeks, SouthCross officials have obtained support for their center from the the Fort Mill Town Council and the Lancaster County Council.

SouthCross's surgery center, which would be located at the intersection of Hwys. 521 and 160, would cost $11.2 million to build. The 24,900-square-foot center would contain four operating rooms, a pain management room and a urinary procedure room.

Springs' Carolina Surgery Center in the 521 Corporate Center would have two operating rooms, two rooms for gastrointestinal procedures and a room for urinary procedures. That 13,300-square-foot center would cost $6.7 million to build.

### More Stories...

#### Local
- Town begins annexation - *(03/11/04)*
- Fort Mill Times poll indicates referendum has support - *(03/11/04)*
- Down to the wire - *(03/11/04)*
- POA may fade away - *(03/11/04)*
- Rules set - *(03/11/04)*
- Doctors sue Springs Memorial Hospital - *(03/11/04)*
- School rosters to rise - *(03/04/04)*
- Don't like the weather? Wait - *(03/04/04)*
- Scaling Kilimanjaro's heights - *(03/04/04)*
- Area hit by snow; rain now forecast - *(03/04/04)*
- Local family 'walking' to find a cure for their daughter - *(03/04/04)*
- A big year, big barbecue - *(03/04/04)*
- Sprucing the Cay - *(03/04/04)*
- Now you see it... - *(03/04/04)*
- Internet company president resigns - *(03/04/04)*
- School district gets another national ranking - *(03/04/04)*
- Sisk Memorial hires new pastor - *(03/04/04)*

#### Education
- They want to live forever - *(03/11/04)*

#### Business
- Get independent insurance - *(03/11/04)*

#### Sports
- Golf tourney returns - *(03/11/04)*

#### LifeTimes
- On the Air - *(02/19/04)*

#### Nation
- In San Francisco, more than 4,000 gay couples tied the knot - *(03/17/04)*

#### World
- Baghdad bombing kills 27; attack goes unclaimed - *(03/17/04)*